UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R & B OF THE PACIFIC,<br><br>Plaintiff,<br><br>v.<br><br>ALAN PRICE and PRO SPORT INSTALLATIONS LLC,<br><br>Defendants. | No. 2:18-cv-03257 KJM AC<br><br>FINDINGS AND RECOMMENDATIONS |

This matter is before the court on plaintiff's motion for default judgment. ECF No. 15. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). This motion was set for hearing on October 2, 2019 at 10:00 a.m. ECF No. 15. Defendant did not appear. ECF No. 16. For the reasons set forth below, the recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

**I.  Relevant Background**

Plaintiff R&B of the Pacific, a California corporation, filed a complaint on December 22, 2018, presenting claims of (1) breach of contract, and (2) fraud. ECF No. 1 at 3-4. According to the complaint, plaintiff is developing a family entertainment center at Cal Expo in Sacramento, California. Id. at 2. Defendant Pro Sport is an Oregon limited liability company that sells commercial batting cages, and defendant Price is an Oregon resident and managing member of

1

Pro Sport. Id. On or about July 6, 2018, R&B entered into contract negotiations with Pro Sport to purchase batting cage equipment for Cal Expo. Id. During those negotiations, Price represented that Pro Sport could supply and install batting cages at Cal Expo. Id. That representation was false; Price knew that Pro Sport was financially insolvent and could neither supply nor install batting cages at the facility. Id. Further, Pro Sport was already under criminal investigation for defrauding other customers. Id.

Despite that knowledge, Pro Sport entered into a contract with R&B on or about July 11, 2018, to provide batting cages at Cal Expo for $72,724.80, with a 50% deposit due immediately for parts. Id. at 3. R&B paid the deposit. Id. Pro Sport, however, did not use that money for the batting cages. Instead, Price used it for personal benefit and to pay his expenses. Id. One month later (August 4, 2018), Price demanded additional funds be mailed to him or wired into his account directly. Id. This demand was in direct conflict with the plain language of the agreement. Id. Price told R&B that the additional money was needed to pay suppliers when, in fact, he had falsely told those same suppliers that the project was on hold because R&B's check had bounced. The money was instead needed to pay personal expenses. Id.

Four months later (December 14, 2018), R&B received a letter from Price that Pro Sport had dissolved on November 18, 2018, and that if plaintiff had any claims against the now defunct company to "please provide a detailed description in writing of the claim, and if there is any money owed as part of your claim, please provide a written invoice detailing such amounts." Id. If not presented by March 15, 2019, the claim would be barred. Id. Price knows about the outstanding claims owed to R&B. Id. To date, however, neither of the defendants have refunded R&B's deposit, nor have they installed batting cages, which had a fair market value in excess of $75,001.00. Id.

A summons in this case was served on each defendant on January 13, 2019. ECF Nos. 4, 5. Defendants did not appear, and plaintiff moved for entry of default on March 26, 2019. ECF No. 6. The clerk entered default the next day. ECF No. 7. Following receipt of an extension of time, plaintiff moved for default judgment against all defendants on August 29, 2019. ECF No.
////

2

13. Defendant did not respond to the motion for entry of default judgment, and has not otherwise appeared in this case.

## II. Motion

Plaintiff moves for default judgment in the amount of $35,764.90, plus interest and costs, for its claims of breach of contract and fraud. ECF No. 15 at 5. This amount reflects the initial deposit paid by plaintiff to defendants. Id. Plaintiff will waive remedies of punitive damages and specific performance. Id. at 7.

## III. Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v.

3

Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

2. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment as discussed below.

a. Breach of Contract

The elements of a cause of action for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach and (4) damage to the

plaintiff as a result of the breach.  Wall Street Network, Ltd. v. New York Times Co., 164 Cal.App.4th 1171, 1178 (2008).  Taking the well-pleaded allegations of the complaint to be true, plaintiff successfully makes out a breach of contract claim against each listed defendant.  Plaintiff alleges the existence of a contract, that plaintiff performed by paying the deposit, that defendants breached by not delivering or installing the batting cages, and that plaintiff was damaged as a result by losing its deposit money and not receiving its batting cages.  See ECF No. 1.  Plaintiff's breach of contact claim is thus sufficient and meritorious.

b. Fraud

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation marks omitted).  Where, as here, a fraud claim would be tried in federal court, it must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Plaintiff's allegations are pled with sufficient particularity and satisfy each of the fraud elements: defendants represented they could supply and install batting cages, they knew these representations were false, they intended to defraud plaintiff into making a monetary payment, plaintiff justifiably relied on defendants' representations regarding the batting cages, and plaintiff was damaged by paying the deposit without receiving the batting cages.  See ECF No. 1.  Plaintiff's fraud claim is thus sufficient and meritorious.

3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct.  Here, plaintiff seeks only to be reimbursed actual damages: the amount it paid to defendants in the form of a deposit on the breached contract, plus interest and costs.  ECF No. 15 at 7.  This amount, $35,746.90, is reflected in an invoice attached to plaintiff's motion, stating payment was received on July 13, 2018.  ECF No. 15-6 at 4.  This amount is proportionate and directly related to defendant's conduct.  Punitive damages and specific performance are waived.  Id.  The fourth Eitel factor thus favors default judgment.

////

#### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177. This Eitel factor therefore favors default judgment.

#### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendant with the summons and complaint. ECF Nos. 1 and 2. Moreover, plaintiff notified defendant by certified mail of its intent to file suit on January 3, 2019. ECF No. 15-1 at 2. Plaintiff received an e-mail from Mr. Price on January 8, 2019 disputing the facts of the complaint, but neither Mr. Price nor his company took any action when plaintiff moved forward with the lawsuit by serving them with the summons and complaint. Id. On February 7, 2019, plaintiff set a letter to each defendant stating that if a response was not received by February 18, 2019, it would move for default judgment. Id. The letters were returned as undeliverable, even though they were sent to the same address as the letter that prompted Mr. Price's one and only communication. Id. A hearing on the motion for default judgment was scheduled, and defendants failed to appear. ECF No. 16.

Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants have completely failed to appear or defend themselves in this action. Thus, the record supports a conclusion that the defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

|   |   |
|---|---|
| 1 | 6. <u>Factor Seven: Policy Favoring Decisions on the Merits</u> |

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

7. <u>Conclusion: Propriety of Default Judgment</u>

Upon consideration of all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants. What remains is the determination of the amount of damages to which plaintiff is entitled.

8. Terms of Judgment

Plaintiff's motion for default judgment seeks only reimbursement of the amount paid in deposit on the contract at issue: $35,764.90, plus 10% interest from the date of contract (July 11, 2018), and costs. ECF Nos. 15 at 8, 15-6 (invoice), 15-7 (check copy). "In diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." <u>Am. Tel. & Tel. Co. v. United Computer Sys., Inc.</u>, 98 F.3d 1206, 1209 (9th Cir. 1996). California regulates prejudgment interest awards by statute. <u>See</u> Cal. Civ. Code §§ 3287; 3289. Prejudgment interest is meant to compensate the plaintiff for the "accrual of wealth" that could have been produced, but for the defendant's failure to perform its obligations. <u>Great W. Drywall, Inc. v. Roel Const. Co.</u>, 166 Cal. App. 761, 767-768 (2008). California law provides for interest at a rate of 10 percent per annum after in contract cases with liquidated damages. Cal. Civ. Code § 3289. The interest here amounts to $4,056.62, for a total damages award or $39,821.52 (actual damages + prejudgment interest). As to the request for costs, plaintiff must seek costs by complying with the requirements of Local Rule 292 and Fed. R. Civ. P. 54.

////

**IV.     Conclusion**

It is RECOMMENDED THAT:

1. Plaintiff's August 29, 2019 motion for default judgment, (ECF No. 15) be GRANTED;

2. The court enter judgment against all defendants in the amount of $39,821.52, reflecting actual costs and prejudgment interest; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: October 2, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE